# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JASON ASHFORD TRISLER,

      Petitioner,

v.                                              Civil Action No. 3:09cv167

D.T. MAHON,

      Respondent.

## MEMORANDUM OPINION

Jason Ashford Trisler, a Virginia prisoner proceeding *pro se*, filed this 28 U.S.C. § 2241[1] petition ("Petition"). Trisler contends that he was falsely accused of diluting his urine, which resulted in a fifteen-day loss of good conduct time and collateral consequences. (Pet. 2-3.) Respondent filed a Rule 5 Answer and Motion to Dismiss (Docket No. 5) and provided Trisler with appropriate *Roseboro* notice (Docket No. 7).[2] Respondent moves to dismiss on the ground that Trisler's claims are unexhausted. (Mem. Supp. Resp't's Mot. Dismiss ("Resp't's Mot. Dismiss"), ¶¶ 3-4.) (Docket No. 6.) Petitioner has filed a response. (Docket No. 12.) The matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 636(c) and 2241. For the reasons that follow, the Court will DENY Respondent's Motion to Dismiss. (Docket No. 5.)

---

[1] 28 U.S.C. § 2241 provides, in relevant part:

(c) The writ of habeas corpus shall not extend to a prisoner unless– . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(c)(3).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. Grounds for Habeas Relief

On March 18, 2009,[3] Trisler filed his Petition in this Court.[4] Trisler states that on January 7, 2008, following a disciplinary hearing, officials at Haynesville Correctional Center ("HCC") convicted him of the disciplinary offense of diluting his urine specimen. (Pet. 2-3.) As a result, Trisler lost fifteen days of good conduct time. (Pet. 2.) Trisler contests the conviction and the resulting loss of good conduct time on three grounds:

Claim 1    Respondent violated Trisler's rights pursuant to the Virginia Constitution and the Constitution of the United States, including his Eighth Amendment[5] right to be free from cruel and unusual punishment (Pet. 3-3a);

Claim 2    Respondent violated Trisler's due process rights[6] because Trisler was prohibited from calling witnesses and presenting a defense during his disciplinary hearing (Pet. 4); and,

---

[3] The Court considers a prisoner's habeas corpus petition filed on the date he delivers his petition to prison authorities for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). In this case, however, it is not clear to the Court when Trisler delivered his Petition to prison authorities for mailing. The Petition contains an affidavit dated September 4, 2008, and the Petition itself appears to have been notarized on November 20, 2008. (Pet. 5.) The Clerk's Office stamped the envelope "received" on March 18, 2009. The Court notes that the form directed Trisler to mail the Petition to this Court's previous address. Therefore, the Court determines that the Petition was filed on March 18, 2009, the date the Clerk's Office ultimately received it.

[4] The Court has before it no other evidence of the procedural background resulting in Trisler's underlying conviction. Trisler used the § 2241 form petition, which sheds no light on the circumstances through which Trisler found himself incarcerated at Haynesville Correctional Center, and the parties have provided no additional information.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

Claim 3    Respondent violated Trisler's due process and Equal Protection[7] rights through the prison's use of a certain drug testing device and method to analyze his urine sample (Pet. 4).

Specifically, as to Claim 1, Trisler contends that he suffers from hypertension, and that the medication prescribed to him to control this condition lowers his creatinine[8] levels, which results in dilution of his urine specimens. (Pet. 3a.)[9] Trisler alleges that HCC medical staff falsely stated that his hypertension medication could not have such an effect on his creatinine levels, and that these false statements "unreasonablly [sic] exposed Petitioner to false disciplinary charges, convictions, and future false charges." (Pet. 3-3a (capitalization corrected).) Additionally, Trisler alleges that he has been forced to choose between taking his hypertension medication and risking a dilution charge or forgoing his medication so as not to dilute his urine specimen, which he contends violates his Eighth Amendment right to be free from cruel and unusual punishment. (Pet. 3a.)

Claim 2 asserts a due process violation because Trisler was not permitted to elicit the testimony of "a voluntary witness, Dr. Jarratt," who could testify as to the effects of Trisler's hypertension medication on his creatinine levels. (Pet. 4.) Trisler contends that the doctor's

---

[7] The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[8] Creatinine is "a white crystalline strongly basic compound . . . formed from creatine and found especially in muscle, blood, and urine." Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/creatinine.

[9] Trisler inserted unnumbered, typed pages explaining the grounds for his claims within the standard § 2241 petition form. Thus, when the Court cites the pages of the Petition, it cites the numeral at the bottom of the Petition page, and when it cites the inserted pages, it designates those pages alphabetically and by corresponding Petition page (e.g., 3a, 4a).

testimony was necessary to the determination of whether the hypertension medications could affect creatinine levels. (Pet. 4.)

In Claim 3, Trisler contends that the drug testing device and method used at HCC are "utterly unreliable as to the accurate determination of whether or not an offender even attempted to **DILUTE** his urine specimen." (Pet. 4.) Trisler alleges that "the manner in which the test was performed was at best 'reckless,'" and that this resulted in an unjust charge of dilution. (Pet. 4a.) Finally, Trisler contends that no analysis was performed of the "specific gravity" content of his urine, and that therefore, "it is arbitrary and capricious to assume 'dilution.'" (Pet. 4a.)

Respondent contends that Trisler has failed to exhaust his state court habeas corpus remedies concerning this claim, and that accordingly, this Court must deny the Petition. (Resp't's Mot. Dismiss ¶¶ 3-4.)

## II. Analysis

### A.    Exhaustion and Procedural Default

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997)). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews*, 105 F.3d at 911 (*citing Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994)). Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). However, "the exhaustion requirement for claims not fairly presented to the state's highest court is technically

4

met when exhaustion is unconditionally waived by the state, or when a state procedural rule would bar consideration if the claim was later presented to the state court." *Matthews*, 105 F.3d at 911 (internal citation omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id. (citing Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id. (quoting Coleman*, 501 U.S. at 735 n.1).

Absent a showing of cause and prejudice or a fundamental miscarriage of justice due to a petitioner's actual innocence, a court cannot review the merits of a procedurally defaulted claim. *Roach v. Angelone*, 176 F.3d 210, 221 (4th Cir. 1999); *see Harris v. Reed*, 489 U.S. 255, 262 (1989).[10] "Cause" in this context means an "objective factor external to the defense" sufficient to thwart an actual attempt to correctly file the claims in state court. *McNeill v. Polk*, 476 F.3d 206, 214 (4th Cir. 2007) (*citing Richmond v. Polk*, 375 F.3d 309, 324 (4th Cir. 2004)).

---

[10] Trisler does not argue that he is actually innocent. *See United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." (*citing Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Instead, he argues that, although he might have had diluted urine resulting from low creatinine levels, this dilution was caused by his hypertension medication. (Pet. 3-4a.)

**B.    Trisler's Claims Are Procedurally Defaulted**

In this case, Trisler admits that he has filed no state habeas corpus petitions. (Trisler Aff. ¶ 3.) (Docket No. 11.) Therefore, the claims are unexhausted. Respondent moved to dismiss on the grounds that Trisler had not exhausted his state court remedies. Generally, a dismissal for failure to exhaust state court remedies proceeds without prejudice, meaning a Petitioner can re-file a claim. In the present case, subsequent to Respondent's filing the motion to dismiss, the time for Trisler to pursue any state court remedies expired. Specifically, because Trisler challenges a conviction other than a criminal conviction or sentence,[11] the Virginia Code required him to file any state habeas petition challenging the dilution conviction prior to January 7, 2009. Va. Code.§ 8.01-654(A)(2) (permitting petitioners to file a state habeas corpus petition, "other than a petition challenging a criminal conviction or sentence . . . within one year after the cause of action accrues"). Therefore, were Trisler now to present Claims 1, 2, and 3 in a state habeas corpus petition, the Virginia courts would find the claims procedurally barred. *See id.*

The United States Court of Appeals for the Fourth Circuit has determined that Virginia's habeas statute of limitations, Virginia Code § 8.01-654(A)(2), constitutes an adequate and independent state procedural rule. *See Mueller v. Angelone*, 181 F.3d 557, 583-84 (4th Cir. 1999); *Yeatts v. Angelone*, 166 F.3d 255, 263-64 (4th Cir. 1999); *Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986). Thus, Claims 1, 2, and 3 are procedurally defaulted. *See Breard*, 134 F.3d at 619.

---

[11] Trisler contends that his conviction for diluting his urine occurred January 7, 2008. (Pet. 2.)

"[T]he issue of procedural default generally is an affirmative defense that the state must plead in order to press the defense thereafter." *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999). In the interests of comity and judicial economy, however, "a federal habeas court may, in its discretion, deny federal habeas relief on the basis of issues that were not preserved or presented properly by a state." *Id.* (finding that the court's exercise of its discretion to notice a procedural default was appropriate despite the Commonwealth's failure to raise the issue); *see also Roach*, 176 F.3d at 215 n.3 (declining to address the issue of procedural default because the petitioner had not been provided with an opportunity to address the issue).

Respondent has failed to raise the issue of procedural default. (*See* Resp't's Mot. Dismiss.) Nevertheless, in the interest of comity and judicial economy, and because Trisler has proffered reasons for his failure to file state habeas petitions, the Court will exercise its discretion to notice Trisler's procedural default. *See Yeatts*, 166 F.3d at 261.

Trisler has not advanced any basis to excuse his default. Trisler argues that his only remedy lies in a § 2241 petition, rather than a § 2254 petition because he seeks to challenge the execution of his sentence and not the underlying state court conviction. (Pet'r's Br. Opp'n Resp't's Mot. Dismiss 1-2.) (Docket No. 12.) In support of his contention that the Court should view his Petition as a § 2241 petition, and not a § 2254 petition, Trisler correctly identifies that the Fourth Circuit has recognized a split among the federal circuits on the issue of whether § 2254 provides the exclusive vehicle through which state prisoners in custody pursuant to a state court judgment, even when the petitioner challenges something other than the underlying state conviction. *See Gregory v. Coleman*, 218 F. App'x 266, 267 (No. 06-6646) (4th Cir. 2007), *available at* 2007 WL 570522, at *1 (comparing *White v. Lambert*, 370 F.3d 1002, 1005 (9th Cir.

2004) ("adopt[ing] majority view that 28 U.S.C. § 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction" (alteration in original)) with *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (construing a § 2254 petition as a § 2241 petition because it challenged the execution of the sentence rather than the underlying conviction)). Nevertheless, courts in this district have concluded that a § 2254 petition is the appropriate procedural vehicle for "individuals 'in custody pursuant to the judgment of a State court.'" *Huff v. Virginia*, No. 3:07cv00691, 2008 WL 2674030, at *2 (E.D. Va. July 7, 2008) (*quoting Medberry v. Crosby*, 351 F.3d 1049, 1060 (11th Cir. 2003) (*quoting* 28 U.S.C. § 2254(a))).

### III. Motion for Appointment of Counsel

A petitioner has no federal constitutional right to counsel when mounting a collateral attack upon his convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 555-559 (1987). Moreover, Trisler's filings indicate he can adequately present his own claims. Accordingly, the Motion for Appointment of Counsel (Docket No. 15) will be DENIED.

### IV. Conclusion

For the foregoing reasons, Respondent's motion to dismiss on the basis of exhaustion will be DENIED. (Docket No. 5.) Within fourteen (14) days of the date of entry hereof, Trisler must show why his claims should not be dismissed as procedurally defaulted. Trisler's Motion for Appointment of Counsel will be DENIED. (Docket No. 15.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Date: 3-3-10
Richmond, Virginia

8